## ORAL ARGUMENT NOT YET SCHEDULED

## No. 22-7060

---

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

ELSA MALDONADO, *et al.*,
*Plaintiffs-Appellants,*

v.

DISTRICT OF COLUMBIA,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia

———————

## BRIEF FOR APPELLANTS

———————

MARTHA JANE PERKINS
National Health Law Program
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(984) 278-7661
perkins@healthlaw.org

KATHLEEN L. MILLIAN
MICHAEL L. HUANG
NICHOLAS F. SOARES
STEPHANIE A. MADISON
Terris, Pravlik & Millian, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009
(202) 682-2100
kmillian@tpmlaw.com
mhuang@tpmlaw.com
nsoares@tpmlaw.com
smadison@tpmlaw.com

September 27, 2022

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND RELATED CASES

**Parties and Amici**

The following persons were the Plaintiffs in the district court and are Appellants in this Court: Elsa Maldonado and BR (a minor), by her parent and next friend, Ann Robertson.

The District of Columbia was the defendant in the district court and is the Appellee in this Court.

There were no amici before the district court. There are no amici before this Court in this appeal.

**Rulings Under Review**

Plaintiffs appeal from the following orders and opinions of the district court (Hon. Richard J. Leon):

1.     March 29, 2022 Order (Record Document ("RD") 156; Joint Appendix ("JA") 539) and Opinion (RD155; JA530), which granted Defendant's Supplemental Motion to Dismiss Plaintiffs' Second Amended Complaint, dated August 6, 2021 (RD146; JA489), denied Plaintiffs' Motion to Lift the Stay on Discovery and Set a Schedule for Discovery, dated August 20, 2021 (RD147; JA499), and denied Plaintiffs' Motion for Leave to File a Third Amended Complaint, dated February 20, 2020 (RD128).

2.     All orders merged therein.

There is no official citation to the decision under appeal in this case. The March 29, 2022 Opinion can be found at 2022 WL 910512.

**Related Cases**

There have been two related proceedings before this Court, neither of which is currently pending.

First, this case was before this Court as Case No. 11-7084. On June 8, 2012, this Court issued a judgment and opinion, reported at 682 F.3d 77 (D.C. Cir. 2012). Second, this case was before this Court as Case No. 14-7054. On July 17, 2015, this Court issued a judgment and opinion, reported at 794 F.3d 31 (D.C. Cir. 2015).

Respectfully submitted,

*/s/ Michael L. Huang*
KATHLEEN L. MILLIAN, Circuit Bar No. 44908
MICHAEL L. HUANG, Circuit Bar No. pending
NICHOLAS F. SOARES, Circuit Bar No. 63714
STEPHANIE A. MADISON, Circuit Bar No. 63723
Terris, Pravlik & Millian, LLP
1816 12th Street, NW, Suite 303
Washington, DC 20009-4422
(202) 682-2100
mhuang@tpmlaw.com

MARTHA JANE PERKINS, Circuit Bar No. 49948
National Health Law Program
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(984) 278-7661
perkins@healthlaw.org

September 27, 2022    *Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW, AND
RELATED CASES .................................................................................. i

TABLE OF CONTENTS ..................................................................... iii

TABLE OF AUTHORITIES ................................................................. v

INTRODUCTION ................................................................................. 1

STATEMENT OF JURISDICTION .................................................... 2

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE ............................................................ 3

           A.     Factual Background ....................................................... 4

                 1.     The District of Columbia's Medicaid Program ............... 4

                 2.     The System for Processing Medicaid Prescription
Drug Claims ................................................................... 4

                 3.     Plaintiffs' Due Process Claim ....................................... 6

           B.     Procedural Background ............................................... 7

SUMMARY OF ARGUMENT ........................................................... 13

STANDARDS OF REVIEW .............................................................. 14

ARGUMENT ...................................................................................... 15

      I .     THE DISTRICT COURT ERRED BY FAILING TO APPLY
THE DOCTRINE OF VOLUNTARY CESSATION TO THE
DISTRICT'S CLAIM OF MOOTNESS .......................................... 15

           A.     THE DISTRICT'S DUE PROCESS VIOLATIONS
NEVER CEASED ................................................................. 16

                 1.     The District Failed to Prove That Its Violations
Ceased ......................................................................... 17

2.  The District Court Disregarded Unrebutted
Evidence of Ongoing Violations ...................................22

3.  The District Court Assumed That Violations Had
Not Ceased.................................................................26

B.  THE TRANSMITTAL MEMO DID NOT
COMPLETELY AND IRREVOCABLY ERADICATE
THE EFFECTS OF THE DISTRICT'S DUE PROCESS
VIOLATIONS ........................................................................28

C.  THE DISTRICT'S DUE PROCESS VIOLATIONS ARE
LIKELY TO RECUR ............................................................30

II .  THE DISTRICT COURT ERRED BY FINDING THAT THE
TRANSMITTAL MEMO PROVIDES COMPLETE RELIEF
TO PLAINTIFFS ..............................................................................39

III .  THE DISTRICT COURT ABUSED ITS DISCRETION BY
GRANTING THE DISTRICT'S MOTION TO DISMISS
WHILE BARRING PLAINTIFFS FROM DISCOVERY .................45

IV .  THE CASE SHOULD BE REASSIGNED .......................................47

CONCLUSION ..........................................................................................53

CERTIFICATE OF COMPLIANCE.......................................................54

CERTIFICATE OF SERVICE.................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alaska v. USDA*,
  17 F.4th 1224 (D.C. Cir. 2021) ........................................................35

*Ameziane v. Obama*,
  699 F.3d 488 (D.C. Cir. 2012) .........................................................15

*Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*,
  564 F.3d 462 (D.C. Cir. 2009) .........................................................18

*Banner Health v. Price*,
  867 F.3d 1323 (D.C. Cir. 2017) .......................................................14

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ...........................................................37

*Burns v. PA Dep't of Correction*,
  544 F.3d 279 (3d Cir. 2008) ............................................................32

*Calderon v. Moore*,
  518 U.S. 149 (1996) (per curiam) ....................................................39

*In re Center for Auto Safety*,
  793 F.2d 1346 (D.C. Cir. 1986) .......................................................38

*City of Erie v. Pap's A.M.*,
  529 U.S. 277 (2000).........................................................................44

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983)...........................................................................34

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) (en banc).........................................40

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994)...............................................................16

*Decker v. Northwest Environmental Defense Center*,
  568 U.S. 597 (2013)................................................................39, 45

*Finstuen v. Crutcher*,
  496 F.3d 1139 (10th Cir. 2007)................................................35, 36

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004)......................................................................4

*Friends of the Earth v. Laidlaw*,
  528 U.S. 167 (2000)................................................................30, 31

*Gluth v. Kangas*,
  951 F.2d 1504 (9th Cir. 1991)................................................16, 29

*Harris v. City of Houston*,
  151 F.3d 186 (5th Cir. 1998)........................................................27

*Hartnett v. Pennsylvania State Education Ass'n*,
  963 F.3d 301 (3d Cir. 2020)....................................................44, 45

*Herbert v. National Academy of Sciences*,
  974 F.2d 192 (D.C. Cir. 1992) .................................... 14, 45, 46, 47

*Hernandez v. Cremer*,
  913 F.2d 230 (5th Cir. 1990)........................................................35

*Heyer v. U.S. Bureau of Prisons*,
  849 F.3d 202 (4th Cir. 2017)........................................................28

*Justice Network v. Craighead County*,
  931 F.3d 753 (8th Cir. 2019)........................................................43

*Kapp v. Wing*,
  404 F.3d 105 (2d Cir. 2005)........................................................28

*Kickapoo Tribe of Indians v. Babbitt*,
  43 F.3d 1491 (D.C. Cir. 1995) ................................................15, 46

*Knox v. SEIU, Local 1000*,
  567 U.S. 298 (2012)................................................................38, 39

*Leigh v. Warner Bros.*,
212 F.3d 1210 (11th Cir. 2000) ........................................................18

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) ........................................................................18

*NB v. District of Columbia* (*NB I*),
800 F. Supp. 2d 51 (D.D.C. 2011) ............................................7, 48

*NB ex rel. Peacock v. District of Columbia* (*NB II*),
682 F.3d 77 (D.C. Cir. 2012) ................................................1, 7, 47

*NB v. District of Columbia* (*NB III*),
34 F. Supp. 3d 146 (D.D.C. 2014) ............................................7, 48

*NB ex rel. Peacock v. District of Columbia* (*NB IV*),
794 F.3d 31 (D.C. Cir. 2015) ..........................1, 4, 5, 6, 8, 21, 33, 47

*NB v. District of Columbia* (*NB V*),
244 F. Supp. 3d 176 (D.D.C. 2017)...................... 6, 8, 33, 40, 42, 47

*New York State Rifle & Pistol Ass'n v. City of New York*,
140 S. Ct. 1525 (2020) (per curiam)..............................................34

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
135 F.3d 1260 (9th Cir. 1998)........................................................36

*Northland Family Planning Clinic v. Cox*,
487 F.3d 323 (6th Cir. 2007)..........................................................35

*PETA v. USDA*,
918 F.3d 151 (D.C. Cir. 2019) .......................................................30

*Porter v. Bowen*,
496 F.3d 1009 (9th Cir. 2007)........................................................35

*Powell v. McCormack*,
395 U.S. 486 (1969)........................................................................43

*Pulse Network v. Visa*,
30 F.4th 480 (5th Cir. 2022).....................................................52, 53

*Rezaq v. Nalley*,
 677 F.3d 1001 (10th Cir. 2012) ........................................................27

*Sheely v. MRI Radiology Network, P.A.*,
 505 F.3d 1173 (11th Cir. 2007) .......................................................32

*Speech First, Inc. v. Schlissel*,
 939 F.3d 756 (6th Cir. 2019) ...........................................................37

*Steel Co. v. Citizens for a Better Environment*,
 523 U.S. 83 (1998) ...........................................................................32

*Super Tire Engineering v. McCorkle*,
 416 U.S. 115 (1974) .........................................................................43

*True the Vote v. IRS*,
 831 F.3d 551 (D.C. Cir. 2016) .................... 14, 15, 16, 17, 25, 26, 28, 30, 31, 41

*Tsombanidis v. W. Haven Fire Dep't*,
 352 F.3d 565 (2d Cir. 2003), *superseded on other grounds by*
 *Mhany Mgmt. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016).....................35

*U.S. v. Sears, Roebuck & Co.*,
 785 F.2d 777 (9th Cir. 1986) ...........................................................52

*United States v. Microsoft Corp.*,
 56 F.3d 1448 (D.C. Cir. 1995) (per curiam) ...................................52

*United States v. W.T. Grant Co.*,
 345 U.S. 629 (1953)...................................................30, 32, 34, 37, 40, 43, 44

*United States v. Wolff*,
 127 F.3d 84 (D.C. Cir. 1997) ..........................................................51

*Vaughn v. Rosen*,
 523 F.2d 1136 (D.C. Cir. 1975) ......................................................18

*West Virginia v. EPA*,
 142 S. Ct. 2587 (2022) ....................................................................38

*Wilderness Society v. Griles*,
 824 F.2d 4 (D.C. Cir. 1987) .............................................................45

*Young v. District of Columbia Housing Auth.*,
    31 F. Supp. 3d 90 (D.D.C. 2014) ....................................................37

*Zukerman v. USPS*,
    961 F.3d 431 (D.C. Cir. 2020) ................................. 15, 26, 28, 29, 41

## United States Constitution

U.S. Const. amend. V .......................................................................2

## Federal Statutes

28 U.S.C. § 1291 ...........................................................................2

28 U.S.C. § 1331 ...........................................................................2

28 U.S.C. § 1343 ...........................................................................2

28 U.S.C. § 2106 ..........................................................................51

42 U.S.C. § 1396 ...........................................................................4

42 U.S.C. § 1396a(a)(30) .................................................................4

42 U.S.C. § 1396a(a)(37) .................................................................4

42 U.S.C. § 1396b(m) .....................................................................4

42 U.S.C. § 1396u-2 ......................................................................4

42 U.S.C. § 1983 ...........................................................................2

## Federal Rules

Fed. R. Civ. P. 1 ..........................................................................14

Fed. R. Civ. P. 12(b)(1) ........................................................ 2, 14, 45, 47

Fed. R. Civ. P. 56(d) ............................................................ 13, 48, 49

**District of Columbia Code**

D.C. Code § 1-204.42 ........................................................................19

D.C. Code § 7-771.07 ........................................................................5

**District of Columbia Regulations**

29 D.C.M.R. § 2700.1 .......................................................................4

**Other Authorities**

13C Charles A. Wright, Arthur R. Miller, Federal Practice &
    Procedure § 3533.7 (3d ed., April 2022 Update) ...........................................16

## INTRODUCTION

This 12-year-old case is on appeal for the third time. It was previously dismissed by the district court, the first time for lack of constitutional standing and second time for the failure to state a claim. Both dismissals were reversed by this Court. *See NB ex rel. Peacock v. District of Columbia* (*NB II*), 682 F.3d 77 (D.C. Cir. 2012); *NB ex rel. Peacock v. District of Columbia* (*NB IV*), 794 F.3d 31 (D.C. Cir. 2015). This time, the district court erroneously dismissed the case as moot, even though the record lacked evidence to show that the challenged conduct had ceased, and, in fact, the record contained unrebutted evidence that the challenged conduct had not ceased. Thus, once again, the dismissal order of the district court requires reversal.

In its long history, the district court has not allowed this case to proceed past the dismissal stage to discovery. After 12 years without progress, including the last three years in which the district court not only allowed but encouraged the District of Columbia (the "District") to attempt repeatedly to moot the case, it is apparent that the district court cannot fairly adjudicate this case in accordance with the Federal Rules of Civil Procedure. Therefore, with great reluctance, Plaintiffs seek an order reassigning the case to a different judge to avoid further prejudice to Plaintiffs' constitutional and procedural rights.

## STATEMENT OF JURISDICTION

This action is brought under 42 U.S.C. § 1983 to enforce the Due Process Clause of the Fifth Amendment of the U.S. Constitution.  The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  It issued a final order and judgment for the District.  JA539.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.      Whether the district court erred by failing to apply the law of voluntary cessation in concluding that Plaintiffs' claims for injunctive and declaratory relief were moot, where there was no evidence that the District's unlawful conduct had ceased and Plaintiffs submitted unrebutted evidence that it had not.

2.      Whether the district court erred by finding that a Transmittal Memo issued by the District provided complete relief to Plaintiffs.

3.      Whether the district court abused its discretion in granting the District's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), where there were disputed jurisdictional facts, the district court did not allow Plaintiffs to discover facts, and the district court resolved the disputed facts against Plaintiffs without an adequate evidentiary basis.

4.      Whether, in light of the history of this case and the district court's conduct in adjudicating it over the past 12 years, this Court should reassign the case to a different judge.

## STATEMENT OF THE CASE

The case is about the District's continuing failure to satisfy its constitutional obligation to provide procedural due process notice to Plaintiffs when they are denied Medicaid coverage of prescribed medications at the pharmacy.  It is a simple claim that should have been timely adjudicated on the merits by now.

Instead, since this case was filed in 2010, Plaintiffs have been prejudiced by repeated dismissals of their case while being stuck in pre-discovery purgatory. Contrary to the way that cases are meant to be adjudicated under the Federal Rules of Civil Procedure, the district court has unreasonably prohibited Plaintiffs from taking any discovery for 12 years, while allowing the District to repeatedly seek dismissal—six times in all.  All the while, Plaintiffs have failed to receive the process they are due under the Constitution, to the detriment of their health, security, and a fair opportunity to protect their property interest in Medicaid benefits.

This time, the district court dismissed this case based on mootness.  However, evidence before the district court showed that Plaintiffs are still not receiving constitutionally required notice when their prescriptions are denied Medicaid coverage by the District.  Therefore, the dismissal was erroneous.

3

A.    **Factual Background**

1.    **The District of Columbia's Medicaid Program**

Medicaid was established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, as "a cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004). The District participates in Medicaid and covers certain prescription drugs under it. JA170, para. 20; JA372, para. 20; *NB IV*, 794 F.3d at 35.

There are two ways in which a state may provide Medicaid to its citizens: through "fee-for-service" (*see* 42 U.S.C. §§ 1396a(a)(30), 1396a(a)(37)), or through "managed care" (*see* 42 U.S.C. §§ 1396b(m), 1396u-2). The District uses both systems, which it calls Fee-for-Service and Managed Care. JA204-05; 235-46; JA247. In Fee-for-Service, the District provides direct "reimbursement for covered outpatient drugs dispensed by a licensed provider." 29 D.C.M.R. § 2700.1. In Managed Care, the District contracts out Medicaid services to private managed care organizations. JA292; JA372, para. 22.

More than three-quarters of the approximately quarter-million Medicaid recipients in the District receive their care through Managed Care. *See* JA204-05; JA292.

2.    **The System for Processing Medicaid Prescription Drug Claims**

In both Fee-for-Service and Managed Care, the determination of Medicaid coverage for prescription drug claims is a multi-step process involving third-party

entities. The overseer of the process (in both systems) is the Department of Health Care Finance, the District agency responsible for implementing and supervising the District's Medicaid program. D.C. Code § 7-771.07. This Court has held that third-party contractors of the District are state actors and, thus, the District is responsible for providing due process protections to Plaintiffs based on the actions of its contractors. *NB IV*, 794 F.3d at 42-44.

A person who seeks to fill a prescription covered by Medicaid does so at a Medicaid-participating pharmacy. JA170-01, paras. 20-23; JA372, para. 20. To determine whether the prescription is covered by Medicaid, the pharmacist enters the claim into an electronic claims management system operated by a pharmacy benefits management company. JA170-01, paras. 21, 23; JA372, para. 21. The system informs the pharmacist whether the prescription will be covered or denied. JA171, para. 23. The pharmacist, in turn, informs the person seeking coverage whether the prescription is covered or denied. JA171, para. 23.

In Fee-for-Service, the District contracts with a pharmacy benefits management company to process claims. JA205; JA372, para. 21. Managed care organizations "can 'process prescription drug claims'" themselves or contract with their own pharmacy benefits management companies. JA205-06 (citation omitted).

### 3.    Plaintiffs' Due Process Claim

Plaintiffs are a putative class that includes Medicaid applicants and beneficiaries who are enrolled in either Fee-for-Service or Managed Care. JA167, para. 10. Such persons are sometimes denied Medicaid coverage for their prescribed medication at the pharmacy. JA166, para. 2; JA370, para. 2. Whether a denial is valid or not, without individualized written notice, the Medicaid beneficiary "is given no indication why the prescription is being denied at the point of sale." *NB v. District of Columbia* (*NB V*), 244 F. Supp. 3d 176, 182 (D.D.C. 2017). This Court has held that Plaintiffs have a Fifth Amendment property interest in the Medicaid coverage of prescription medication. *NB IV*, 794 F.3d at 42. Thus, upon the denial of coverage, Plaintiffs are entitled to the protections of procedural due process (*id.* at 44), including individualized written notice informing them of the reason for the denial. *NB V*, 244 F. Supp. 3d at 182-83.

Procedural protections are vitally important because their absence can result in serious harms. In this litigation, documented harms to Plaintiffs have included medical problems due to foregoing medication (JA456-60, paras. 6-14, 20, 22-26); emergency room or specialist treatment due to the delay in receiving medication (JA297, para. 27; JA302, para. 19); efforts to conserve and stockpile medication in anticipation of future denials without notice (JA303, para. 26; JA453, paras. 21-22); and stress and anxiety over one's health, the health of one's children, and being

unable to afford out-of-pocket payment for medication.  JA452-53, paras. 20, 23;

JA459, 461, paras. 21, 31; JA296-97, paras. 18, 28; JA301, 303, paras. 15, 26.

## B.    Procedural Background

At the time Plaintiffs filed their initial complaint, in September 2010, the

District had no policy or system requiring it or its contractors to provide Plaintiffs

with individualized written notice upon the denial of Medicaid coverage for

prescription medication.  Soon after Plaintiffs filed their complaint, the District filed

the first of six motions to dismiss.  At the District's request, the district court stayed

discovery pending a ruling on the motion to dismiss.  Ever since—except for a brief

period in 2020 when the case was un-stayed before being stayed again—Plaintiffs

have been prohibited from taking discovery.

The district court granted the District's first motion to dismiss based on lack

of standing.  *NB v. District of Columbia* (*NB I*), 800 F. Supp. 2d 51, 56-57 (D.D.C.

2011).  Litigation over the next seven years produced the following opinions which

resolved, in Plaintiffs' favor, the issues of standing, state action, the cognizability of

Plaintiffs' claim, and the District's obligation to provide individualized written

notice:

> *NB II*, 682 F.3d at 82-87 (reversing *NB I* and holding that Plaintiffs
> sufficiently pleaded Article III standing).

> *NB v. District of Columbia* (*NB III*), 34 F. Supp. 3d 146 (D.D.C. 2014)
> (dismissing case for the second time on the grounds that Plaintiffs failed
> to state a claim under Rule 12(b)(6)).

*NB IV*, 794 F.3d at 41-44 (reversing *NB III* in part; holding (1) that Plaintiffs stated a claim under the Fifth Amendment and (2) that the District takes state action when its contractor denies Medicaid coverage to Plaintiffs; and remanding to the district court to determine "in the first instance . . . what process is due").

*NB V*, 244 F. Supp. 3d at 182 (denying the District's third motion to dismiss; ruling that the District's existing notice procedures "cannot constitute adequate notice" and that Plaintiffs are entitled to "some initial written notice of the reason for the denial").

By 2017, after *NB IV* and *NB V* were decided, it was clear that Plaintiffs' claim was meritorious and the District's failure to provide individualized written notice was constitutionally untenable.

After obtaining favorable decisions in *NB IV* and *NB V*, and after unsuccessful settlement talks with the District, Plaintiffs tried in vain to move the case forward through a renewed motion for class certification and motions for summary judgment, discovery, and permanent and preliminary injunctions. *See* JA18-30. The district court denied all of these motions—most "without prejudice" and without explanation. *See* JA272; JA400; JA402; JA462. Yet the district court continued to entertain fourth, fifth, and sixth motions to dismiss from the District, and encouraged and enabled the District's attempts to moot the case. *See* pp. 51-51 below.

In May 2019, while Plaintiffs' motion for summary judgment and a permanent injunction was pending (*see* JA18-21), the District began a pilot program "to test the operational feasibility of having Medicaid-participating pharmacies hand out individualized paper notices to beneficiaries who were denied their prescription

drugs at the point of sale." JA321. In a letter filed on October 15, 2019, the District

represented that "[n]o determination has been made as to whether, and if so when, a

full-scale version can, will or should be implemented." JA321.

On November 1, 2019, at oral argument on Plaintiffs' motion for a preliminary

injunction, counsel for the District represented that the feasibility of a city-wide

program was still being assessed. JA339-40 (Tr. 17:6-18:7). The district court

directed the District to file another letter informing it of the cost considerations of a

city-wide program. JA346 (Tr. 24:11-23).

On November 4, 2019, the District filed its letter, stating that:

> it would cost approximately $572,000 to run the [individualized written
> notice] program for 12 months. These funds are is [sic] not in the Fiscal
> Year 2020 budget or the Fiscal Year 2021 budget request. If these
> funds were budgeted, expansion of the program would require the
> approval of Wayne Turnage, the Director of [the Department of Health
> Care Finance]and Deputy Mayor for Health and Human Services.

JA438.

The district court accepted the District's representations that providing

individualized written notice would not be a simple matter. On December 16, 2019,

in an opinion denying Plaintiffs' preliminary injunction motion, the district court

described the provision of written notice as:

> a costly enterprise that would no doubt impose *significant* financial and
> administrative burdens on the District. Indeed, plaintiffs' proposed
> relief would require the District to implement that program within sixty
> days of any order by this Court, which amounts to a mandate that the

District disburse funds it does not have in its current budget. *See*
11/4/19 Ltr from C. Risher.

JA398 (emphasis in original).

On January 10, 2020, despite the District's representation only two months
earlier that funding was not in the budget to implement a city-wide policy, the
District's Medicaid Director, Melisa Byrd, issued Transmittal #20-01 (the
"Transmittal Memo"), a memorandum which purports to require Medicaid-
participating pharmacies to "distribute individualized written notices to Medicaid
beneficiaries whose prescription medication claim request is denied after
adjudication at the pharmacy point of sale." JA409.

On February 25, 2020, relying on the Transmittal Memo, the District moved
to dismiss the case for the fifth time, arguing that it was moot. JA404. Over a year
later, in a March 23, 2021, minute order, the district court denied the motion, stating
that it had identified "factual issues" that it wanted to address at a status conference.
JA468.

Several months passed, however, without the district court setting the status
conference promised in the March 23 minute order. On June 30, 2021, Plaintiffs
filed a motion for the district court to schedule that status conference. JA470-72.
To impress upon the district court the urgency of their motion, Plaintiffs attached
evidence that the District was failing to implement or otherwise ensure pharmacy
compliance with its Transmittal Memo. *See* JA473 (Second Declaration of Ann

Robertson ("Robertson Decl.")); JA478 (Declaration of Lior Wolf ("Wolf Decl."));

JA484 (Declaration of William Fortna ("Fortna Decl.")).  Although Plaintiffs were

prohibited from taking discovery, they conducted their own investigation of 16

Medicaid-participating pharmacies and found non-compliance with the Transmittal

Memo in all eight wards of the District, 17 months after the Memo was issued, with

only three of the 16 pharmacies reporting that they used the written notice

supposedly required by the District.  JA478-83, paras. 3-6, 8-16 (Wolf Decl.);

JA484-88, paras. 3-6, 8-14 (Fortna Decl.).  In addition, on two occasions between

13 and 15 months after the issuance of the Transmittal Memo, Plaintiff BR was

denied coverage of a Medicaid prescription without receiving written notice.  JA475-

76, paras. 11-17 (Robertson Decl.).

On July 6, 2021, the district court granted Plaintiffs' motion for a status

conference and on July 23, 2021, held a status conference to discuss the factual

issues it had identified.  JA28.  The district court indicated that it thought the case to

be moot, stating that:

> there's a few factual issues that seem to me to be unresolved and up in
> the air that I want to get your attention to focus on before the Court can
> be satisfied that the case is moot.  The District has made a special effort
> to try to resolve this case in a way that would result in it being mooted,
> right?

JA502 (Tr. 2:14-19).  The Court then asked three questions of the District which it

thought would moot the case:

(1) Are class members actually receiving individualized written notice? JA504 (Tr. 4:2-8).

(2) Does the Transmittal Memo apply to Medicaid applicants?  JA503 (Tr. 3:10-24).

(3) Does the Transmittal Memo apply to managed care organizations? JA502-03 (Tr. 2:25-3:9).

The Court indicated that if "open questions" remained after the District provided its answers to the questions, Plaintiffs could finally seek discovery.  JA507 (Tr. 7:11-12).  As the Court stated:

> I'm not going to launch offensive discovery until I've heard what [the District has] found and what they have to say.  My guess is if there are open questions on this front they will agree to do discovery, but I want to see what the state of play is with regard to this right now.
>
> So I'll wait to see what they have to say.  You'll get a chance to review it.  If, after reviewing it, you think discovery is appropriate, you can file a motion for discovery.

JA507 (Tr. 7:9-18).  Addressing the District, the Court said:

> My guess is if you [the District] come back with answers to these questions that are indefinite, you don't have clarity, and you don't have, you know, closure on these—resolving these issues, you'll agree to discovery.

JA507-08 (Tr. 7:23-8:2).  The Court did not address Plaintiffs' evidence that the Transmittal Memo was not being implemented by 13 of 16 pharmacies surveyed.

On August 6, 2021, the District filed its six-page response to the district court, styled as a "Supplemental Filing Renewing Its Motion to Dismiss Plaintiffs' Second Amended Complaint or, in the Alternative, for Summary Judgment."  JA489.  That

filing amounted to the District's sixth motion to dismiss and another bite at the apple to dismiss the case based on mootness.

The District's Supplemental Filing did not resolve the three issues identified by the district court. Critically, it did not rebut Plaintiffs' evidence showing that most pharmacies surveyed were not providing individualized written notice and did not provide specific facts to show that class members—whether applicants, Fee-for-Service, or Managed Care beneficiaries—are actually receiving individualized written notice. Accordingly, Plaintiffs opposed the District's sixth motion to dismiss and, since the District had moved for summary judgment in the alternative, submitted a Rule 56(d) affidavit setting forth the reasons why discovery was necessary to discover facts unavailable to Plaintiffs. *See* JA29; JA509; JA524. At the same time, based on the district court's invitation to seek discovery if "open questions" remained, Plaintiffs moved to lift the stay on discovery. JA499.

However, the district court accepted the District's Supplemental Filing as sufficient to moot the case and disregarded Plaintiffs' evidence. On March 29, 2022, the district court granted the District's motion to dismiss, denied Plaintiffs' motion to lift the stay on discovery, and dismissed the case. JA530-38; JA539.

## SUMMARY OF ARGUMENT

In finding the case moot, the district court erred in three ways. First, the district court failed to apply the doctrine of voluntary cessation to the District's claim

of mootness.  Second, the district court erred in finding that the Transmittal Memo provides complete relief to Plaintiffs.  Third, the district court abused its discretion by ruling on mootness before Plaintiffs had any opportunity to discover relevant jurisdictional facts.

Over the 12-year life of this case, the district court has demonstrated that it cannot fairly apply the law to Plaintiffs and will not allow the case to proceed to a "just, speedy, and inexpensive determination" under the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 1.  Thus, in the interest of justice, the case should be reassigned to a new judge to avoid further prejudice to Plaintiffs' constitutional and procedural rights.

## STANDARDS OF REVIEW

The legal conclusions of the district court in dismissing a case under Rule 12(b)(1) are reviewed de novo.  *True the Vote v. IRS*, 831 F.3d 551, 562 (D.C. Cir. 2016).  If the district court has "determine[d] disputed factual issues" in the mootness inquiry, the Court reviews them for clear error.  *Id.* at 555.

A finding is clearly erroneous if, "after reviewing the evidence," the Court is "left with the definite and firm conviction that a mistake has been committed." *Herbert v. National Academy of Sciences*, 974 F.2d 192, 198 (D.C. Cir. 1992).

The Court reviews "evidentiary and docket management decisions for abuse of discretion." *Banner Health v. Price*, 867 F.3d 1323, 1334 (D.C. Cir. 2017).  "The

14

exercise of discretion contemplates reasoned decision making on the basis of relevant and appropriate considerations to the task at hand." *Kickapoo Tribe of Indians v. Babbitt*, 43 F.3d 1491, 1497 (D.C. Cir. 1995). "[I]f the exercise of discretion was in error and the prejudicial impact of that error requires reversal . . . the district court has abused its discretion." *Id.* (citation omitted).

## ARGUMENT

## I. THE DISTRICT COURT ERRED BY FAILING TO APPLY THE DOCTRINE OF VOLUNTARY CESSATION TO THE DISTRICT'S CLAIM OF MOOTNESS

The district court neither cited nor applied legal standards to the District's claim of mootness. The district court's failure to do so was an error of law. *Ameziane v. Obama*, 699 F.3d 488, 494-95 (D.C. Cir. 2012) (failure to properly apply legal standard is an error of law that warrants de novo review).

Where a defendant ceases its illegal conduct, that situation is known as "voluntary cessation." *See True the Vote*, 831 F.3d at 561. "As a general rule, voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Zukerman v. USPS*, 961 F.3d 431, 442 (D.C. Cir. 2020) (cleaned up). Under the voluntary cessation doctrine, a defendant claiming mootness has a "heavy burden" to prove that "(1) there is no reasonable expectation that the conduct will recur and (2) interim

relief or events have completely and irrevocably eradicated the effects of the alleged violation." *True the Vote*, 831 F.3d at 561 (citation omitted).

We show below that the district court did not apply the voluntary cessation criteria to the District's claim of mootness.

## A.    THE DISTRICT'S DUE PROCESS VIOLATIONS NEVER CEASED

As an initial matter, to prove voluntary cessation, a defendant must show that there has been actual cessation of its illegal conduct. *See True the Vote*, 831 F.3d at 561 (application of the two-part test for voluntary cessation not necessary when "voluntary cessation has never occurred"); *Comer v. Cisneros*, 37 F.3d 775, 800 (2d Cir. 1994) ("defendants have not even met the burden of showing that the allegedly illegal conduct has ceased"); *Gluth v. Kangas*, 951 F.2d 1504, 1507 (9th Cir. 1991) ("the Department provided no *facts* to support its claim that the inmate access situation had changed at all" despite issuance of a new policy (emphasis in original)); *see also* 13C Wright & Miller, Federal Practice & Procedure § 3533.7 (3d ed., April 2022 Update) (no voluntary cessation "when it is shown that the challenged activities in fact continue").

Here, the district court did not require the District to make any showing that the Transmittal Memo resulted in the actual cessation of the District's due process violations.  The district court compounded that error by disregarding Plaintiffs' unrebutted evidence showing that the District's due process violations are ongoing.

Rather than considering evidence of cessation, the district court erroneously accepted the existence of a new policy as *per se* proof of mootness.

### 1.    The District Failed to Prove That Its Violations Ceased

At the status conference held on July 23, 2021, the district court asked the District "whether any members of the putative class are still not receiving notice of the new policy." JA504 (Tr. 4:4-6). As the district court stated: "I wanted to make sure that all the members of the putative class were getting the notice they're entitled to." JA504 (Tr. 4:6-8).

In its Supplemental Filing of August 6, 2021, the District responded that "people . . . are <u>apparently</u> receiving such notice." JA489 (emphasis added). The sole evidence supporting that statement was a declaration from the author of the Transmittal Memo, Ms. Byrd, who stated that: "<u>[a]s far as the District is aware</u>, the notification policy is largely successful." JA497, para. 12 (emphasis added).

The District's Supplemental Filing fell far short of showing that the District was providing individualized written notice to Plaintiffs and that its due process violations had ceased. First, Ms. Byrd's statement that, "[a]s far as the District is aware, the notification policy is <u>largely</u> successful" (JA497, para. 12 (emphasis added)) is not a conclusive statement that the policy was fully successful. As set forth below, pp. 24-25, it was the District's burden to prove that <u>all</u> Plaintiffs receive written notice, not some. *True the Vote*, 831 F.3d at 561-62.

17

Second, the District did not provide specific facts, such as data or statistics, to show that Plaintiffs are receiving required notice, relying instead on the vague and conclusory statements above.  Neither the District nor Ms. Byrd supported those statements with facts about how they claimed to know that people are "apparently" receiving notice and that the policy is "largely successful."  JA489; JA497, para. 12. It is a basic rule of evidence that conclusory affidavits without supporting facts lack evidentiary value.  *See, e.g.*, *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 898-99 (1990) (conclusory affidavits unsupported by "specific facts" should not be accepted as true for summary judgment purposes); *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009) (same); *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975) (conclusory affidavits "fail to carry the Government's burden of proof"); *Leigh v. Warner Bros.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("conclusory allegations without specific supporting facts have no probative value").

Third, the District presented no evidence that the program to provide individualized written notice was funded in the District's budget.  In a November 2019 letter, the District represented that it would cost $572,000 to run such a program for 12 months and that those funds were in neither the 2020 budget nor the 2021 budget request.  JA438.  Furthermore, the District represented that "[i]f these funds were budgeted, expansion of the program would require the approval of

Wayne Turnage, the Director of [the Department of Health Care Finance]." *Id.*

Funding in the District budget would also require the approval of the Mayor and the

D.C. Council. *See* D.C. Code § 1-204.42 (Mayor prepares annual budget); *id.* § 1-

204.46 (Council enacts budget). The District never presented evidence that any of

those conditions were met.

Fourth, the District did not provide evidence that it trains pharmacies to

distribute the required notice or that it monitors compliance with the Transmittal

Memo. According to the Transmittal Memo, notice forms are in triplicate and "[t]he

yellow copy of the NOTICE will be retrieved by [the Department of Health Care

Finance] on a regularly scheduled basis for program compliance monitoring,

automatic form replenishment and data analysis purposes." JA409. However, the

District provided no facts to show that it actually monitors compliance, replenishes

forms, or analyzes data.

The District represented that its compliance measures consist of "mandating

compliance under its new [Managed Care] contracts," "discussing the policy

regularly with pharmacies and [managed care organizations]," and "reminders to

pharmacies." JA491. No mention is made of monitoring pharmacy compliance,

replenishing forms to the pharmacies, or analyzing data.

According to the 2021 Byrd declaration, three of four Managed Care contracts

include the following provision:

19

> C.5.28.17.6 The Contractor shall ensure network pharmacies distribute to Enrollees the . . . official beneficiary notice whenever a prescription drug is denied at the pharmacy point of sale.  Contractor shall monitor and track distribution of the notice and submit a report in a format and frequency as determined by [the Department of Health Care Finance].

JA496, para. 7.  However, the declaration did not contain facts which show that managed care organizations "ensure network pharmacies distribute" written notice, "monitor and track distribution of the notice," or submit any reports about pharmacy compliance.  Thus, the District presented no evidence that it or its contractors actually monitor the distribution of notice.  Without monitoring, the District cannot know whether pharmacies are providing written notice to Plaintiffs.

Fifth, although the District claimed that the Transmittal Memo covers class members enrolled in Managed Care (JA490-91), the District admitted that one of its Managed Care contracts lacks any provision requiring the managed care organization to provide written notice.  JA491-93 & n.1; *see also* JA496, para. 7 & n.1.  According to another conclusory statement in the 2021 Byrd declaration, that organization nevertheless "is aware of and complies with the [notice] policy." JA496, n.1.  However, the declaration did not provide any supporting facts to demonstrate that managed care organization's compliance (or, for that matter, any other managed care organization's compliance).  If the District is not contractually requiring one of its managed care organizations to provide written notice, there can be no assurance that the beneficiaries enrolled with that managed care organization

20

receive such notice.  Indeed, BR, the named Plaintiff who on two occasions did not receive written notice when her Medicaid claims were denied (over a year after the Transmittal Memo issued), was enrolled with the managed care organization that is supposedly "aware of" the notice policy that is not in its contract.  JA473, 475 paras. 4, 12.  Thus, the District's admission that it does not require one of its managed care organizations to provide written notice in its contract, absent specific facts showing that it in fact provides written notice, fails to establish that the District's violations have ceased.

Sixth, despite its claim that the Transmittal Memo covers Managed Care beneficiaries, the District has continued to disavow control over its Managed Care contractors, claiming that "it is the responsibility of each" managed care organization—not the District—"to require any necessary action by its" contractor. JA491, n.1.  The District has maintained this position even after this Court determined in *NB IV* that contractors in Fee-for-Service Medicaid take state action. 794 F.3d at 42-44.  As the District stated in its fourth motion to dismiss:

> [T]he injunction plaintiffs seek, to change the District's "policies, practices, and procedures" to ensure they "comply with the Due Process Clause of the Fifth Amendment of the Constitution" would not apply to or redress an injury suffered by [a Managed Care] beneficiary . . . . The District . . . cannot control what notice [a managed care organization's pharmacy benefits manager] provides to a pharmacy or what notice the pharmacy, then, provides to the beneficiary.

21

JA219 (emphasis added). The District claimed that it would be "purely speculative" whether a change in its policies would be enforced by managed care organizations, their contractors, and pharmacies. JA267.

Over three-quarters of all Medicaid beneficiaries are enrolled in Managed Care. *See* JA204-05; JA292. If the District is correct that it is "purely speculative" whether the Transmittal Memo will result in Managed Care contractors actually providing written notice to Plaintiffs, there can be no assurance that any class members enrolled in Managed Care receive written notice. The District's rejection of responsibility over its Managed Care contractors suggests that the large majority of class members do not receive constitutionally required notice.

Next, we show that Plaintiffs provided unrebutted evidence of ongoing due process violations.

## 2.    The District Court Disregarded Unrebutted Evidence of Ongoing Violations

Although Plaintiffs were prejudiced by their inability to take discovery, they conducted their own investigation 17 months after the issuance of the Transmittal Memo and found that 13 out of 16 pharmacies surveyed were not providing individualized written notice. JA478-83 (Wolf Decl.); JA484-88 (Fortna Decl.). That evidence showed starkly that the due process violations alleged by Plaintiffs had not ceased.

Plaintiffs' evidence should have been enough to deny the District's motion to dismiss, yet the district court disregarded it as trivial:

> [Plaintiffs] . . . cite a small handful of individualized instances of alleged noncompliance with the new policy. But to ask the Court to police such individual instances of non-compliance—or to order the District to enforce its health regulations in a specific manner—is to go far beyond the scope of plaintiffs' due process claim.

JA537.

The district court's characterization of Plaintiffs' evidence as "a small handful of individualized instances of alleged noncompliance with the new policy" was contrary to the evidence and clearly erroneous. As set forth above, the evidence consisted of sworn declarations reporting that 13 of 16 pharmacies surveyed, from all eight wards of the city, were not providing written notice. JA478-83 (Wolf Decl.); JA484-88 (Fortna Decl.). The declarations describe each pharmacy surveyed, including name and address, and describe with specificity that pharmacists were shown the Transmittal Memo and asked whether written notice was being provided in accordance with it. JA478-83; JA484-88. Contrary to the District's representations that it ensures compliance with the Transmittal Memo, the pharmacists' responses revealed not only overwhelming lack of compliance with the Transmittal Memo, but unawareness of it. For example, at one pharmacy, the affiant, Mr. Wolf:

> showed the pharmacist a copy of the individualized written notice attached to . . . Transmittal # 20-01, and he did not recognize it. The

23

> pharmacist also said that the pharmacy has not received any guidance
> from the DC government regarding the types of denial notices that the
> pharmacists should be giving out to Medicaid recipients.

JA481, para. 11.

The District's response to Plaintiffs' declarations was a footnote stating that "[t]he District is unable to assess the import of [Plaintiffs' evidence], not knowing what plaintiffs' staff allegedly asked, of whom, or from whom they allegedly received whatever answers[.]"   JA492, n.3.   Thus, Plaintiffs' evidence was unrebutted, and the district court had no basis for concluding that that evidence represented a "small handful of individualized instances."  JA537.

Moreover, other evidence showed that the District's violations had not ceased. As described above, the District admitted that a contract with one of its managed care organizations did not require it to provide individualized written notice (JA491-93 & n.1; *see also* JA496, para. 7 & n.1), and  Plaintiff BR reported not receiving written notice on two separate occasions when her prescriptions were denied Medicaid coverage 13-15 months after the issuance of the Transmittal Memo. JA475-76, paras. 11-17 (Robertson Decl.).  These facts were ignored by the district court.

However, even assuming *arguendo* that Plaintiffs' evidence showed that only a "handful" of pharmacies were not complying with the Transmittal Memo (which is not what the evidence shows), under the proper legal standard, that degree of

noncompliance would mean that the District had not ceased its violations and the case was not moot. This Court has made clear that a defendant's "heavy burden" is to establish total cessation, "not near cessation." *True the Vote*, 831 F.3d at 561. In *True the Vote*, nonprofit groups alleged that they had been targeted by the IRS for enhanced scrutiny of their applications for tax-exempt status based on unconstitutionally discriminatory criteria. 831 F.3d at 556. After those groups sued the IRS, the IRS supposedly ceased its allegedly discriminatory policy and processed the "vast majority" of their applications, so that by the time the case was on appeal, no more than two remained pending. *Id.* at 561. In reversing the district court's dismissal of the case as moot, this Court stated that the "heavy burden of establishing mootness is not carried by proving that the case is nearly moot, or is moot as to the 'vast majority' of the parties." *Id.* (citation omitted). Here, Plaintiffs showed that, after the District issued the Transmittal Memo, 13 of 16 pharmacies surveyed were still not providing individualized written notice to any Medicaid beneficiary or applicant and Plaintiff BR still did not receive such notice when her Medicaid coverage was denied. Just like in *True the Vote*, the record here shows that "voluntary cessation has never occurred." 831 F.3d at 561; *id.* at 562 ("if you haven't ceased to violate the rights of the [plaintiffs], then there is no cessation. You have not carried your burden, be it heavy or light").

### 3.    The District Court Assumed That Violations Had Not Ceased

Rather than addressing whether the challenged conduct had in fact ceased, the district court went so far as to assume that the District was <u>not</u> in compliance with the Transmittal Memo, stating that even if "the District has not yet demonstrated that the pharmacies in question are actually fully in compliance with the policy or that all putative members of the class are in fact receiving notice each time they are denied the relevant benefits[,]" the District "did not need to show that its notice policy has been and continues to be implemented flawlessly."  JA537.  In other words, contrary to the applicable legal standard, the district court reasoned that the case was moot whether or not the District's unlawful conduct had fully ceased.  That was error.  *See, e.g.*, *True the Vote*, 831 F.3d at 561-62.

The district court erroneously relied on the Transmittal Memo as *per se* evidence of mootness.  *See* JA538 ("I find that the District, via Transmittal #20-01, has enacted a policy that provides plaintiffs with the precise relief they seek").  However, mootness does not automatically result from a change in policy, even if the new policy is intended to cease allegedly illegal conduct.  *See, e.g.*, *True the Vote*, 831 F.3d at 558-59 (no voluntary cessation even though the IRS "stopped using its admittedly improper discriminatory criteria and handling of applications by taxpayers with politically disfavored names"); *Zukerman*, 961 F.3d at 443 (no voluntary cessation even though the Postal Service changed its policy because the

plaintiff alleged ongoing discrimination despite the changed policy); *Rezaq v. Nalley*, 677 F.3d 1001, 1009 (10th Cir. 2012) (no voluntary cessation even though "[t]he [Bureau of Prisons] is correct that the procedures that controlled plaintiffs' initial transfers are no longer in force. . . . [T]his point places undue focus on the policies themselves, which detracts from the real issue: whether the [Bureau of Prisons] has sufficiently mitigated the effects of any harm caused by the old policies").

The district court further reasoned that the case is moot because the Transmittal Memo was "designed to" require notice and, if "implemented correctly, will lead" to the provision of notice.[1]  JA537.  That reasoning was also erroneous. "[A] request for injunctive relief generally becomes moot upon the happening of the event sought to be enjoined" (*Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998)), not before the happening of the event.  Since the Transmittal Memo had not yet been "implemented correctly," as the evidence shows, *a fortiori*, the case is not

---

[1]  The Transmittal Memo would not be constitutionally sufficient even if "implemented correctly."  The district court erroneously stated that Plaintiffs did not "directly challenge the sufficiency of the [Transmittal Memo] as a general matter" and that they "cannot dispute that the policy, implemented correctly, will lead to the exact form of individualized notice that they seek[.]"  JA537.  In fact, Plaintiffs did challenge the sufficiency of the Transmittal Memo and did dispute that the Memo would lead to the provision of constitutionally sufficient notice.  *See* JA465-66; JA517.  Plaintiffs showed that (1) the District admitted that its notice forms were out of date, and (2) the forms contained a material inaccuracy regarding Plaintiffs' procedural rights.  JA517.

moot.  *See DL v. District of Columbia*, 187 F. Supp. 3d 1, 14 (D.D.C. 2016)

("systems" which were "<u>designed to</u> fully comply with [the District's] obligations"

under federal law were insufficient to moot case (emphasis added)); *cf. Heyer v. U.S.*

*Bureau of Prisons*, 849 F.3d 202, 220 (4th Cir. 2017) ("bald assertion of future

compliance" insufficient to moot case (cleaned up)); *Kapp v. Wing*, 404 F.3d 105,

123 (2d Cir. 2005) (upholding injunctive relief in a procedural due process case

where the state agency had taken significant steps to reduce unlawful practice but

never "argued that they have *eliminated* the practice" (emphasis in original)).

## B.    THE TRANSMITTAL MEMO DID NOT COMPLETELY AND IRREVOCABLY ERADICATE THE EFFECTS OF THE DISTRICT'S DUE PROCESS VIOLATIONS

Since the District could not and did not show actual cessation of its violations,

it also failed to satisfy the second element of the two-part test for voluntary cessation,

that "interim relief or events have <u>completely and irrevocably eradicated</u> the effects

of the alleged violation."  *True the Vote*, 831 F.3d at 561 (emphasis added).  The

district court's failure to conduct any analysis on this element was an error of law.

In *Zukerman*, this Court considered whether a plaintiff's claim for viewpoint

discrimination under the First Amendment, which challenged a 2015 Postal Service

policy, was mooted by a 2018 policy that replaced the 2015 policy.  961 F.3d at 436-

40, 41-44.  Although the Court recognized that the district court could "no longer . .

. prohibit[] the Postal Service from enforcing a policy that is no longer on the books,"

it held that "Zukerman's claim of ongoing viewpoint discrimination is emphatically not moot due to USPS's voluntary cessation[,] . . . because the Postal Service has not carried its heavy burden of demonstrating that its voluntary actions have completely eradicated the effects of its alleged violations." *Id.* at 443. The critical fact supporting that conclusion was that Zukerman alleged "ongoing" discrimination which continued in practice even after the issuance of a superseding policy. *Id.* at 442-43. So, too, here: Plaintiffs alleged an "ongoing . . . pattern, practice, and/or custom" violating their rights. JA198, para. 153 (emphasis added). After the District issued the Transmittal Memo, Plaintiffs supported that allegation with unrebutted evidence showing that their injuries are ongoing. *See* pp. 22-26 above.

In *Gluth v. Kangas*, the Ninth Circuit held that the Arizona Department of Corrections failed to show voluntary cessation in a case concerning prison inmates' access to a prison law library. 951 F.2d at 1507. Although the prison promulgated a "new access policy" post-litigation, "the Department provided no *facts* to support its claim that the inmate access situation had changed at all." *Id.* (emphasis in original). Thus, "the policy did not 'completely and irrevocably eradicate[] the effects of the alleged violation[.]'" *Id.* (citation omitted). So, too, here: the District provided no facts to support its claim that its failure to provide individualized written notice has changed at all.

As this Court said in *True the Vote*, after finding that the IRS had not even shown cessation of the challenged conduct: "As to element 2, it is absurd to suggest that the effect of the IRS's unlawful conduct, which delayed the processing of appellant-plaintiffs' applications, has been eradicated when two of the appellant-plaintiffs' applications remain pending." 831 F.3d at 563. Likewise, it would be absurd to find that the effects of the District's unlawful conduct have been eradicated when unrebutted evidence shows that Plaintiffs' rights continue to be violated by the District.

## C.    THE DISTRICT'S DUE PROCESS VIOLATIONS ARE LIKELY TO RECUR

Even when a defendant shows that unlawful conduct has ceased (which has not been shown here), the party claiming voluntary cessation must show that "there is no reasonable expectation that the conduct will recur." *True the Vote*, 831 F.3d at 561. As stated by the Supreme Court, it must be "<u>absolutely clear</u> that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 170 (2000) (emphasis added). Otherwise, a defendant would be "free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).

The test for recurrence involves "an evaluation of probabilities as to future conduct that can . . . involve detailed inquiry beyond the pleadings that is 'a matter for the trial judge.'" *PETA v. USDA*, 918 F.3d 151, 156 (D.C. Cir. 2019) (citation

omitted).  This Court has said that the district court is not entitled to deference in that analysis.  *See id.*  But whether the district court is entitled to deference or not, its analysis was erroneous.  *See True the Vote*, 831 F.3d at 555-56 ("Even if we accord deference to the district court, the government has not carried its heavy burden of showing mootness under the voluntary cessation doctrine").

The district court addressed the issue of recurrence in the following footnote:

> Plaintiffs have made no more than a cursory suggestion that the failure to provide notice is likely to recur due to a change in this policy, and there does not appear to the Court to be any reason to believe the District will soon reverse course and retract Transmittal #20-01, for example.  As a result, I have no trouble concluding that any suggestion that the plaintiffs will again be harmed by a lack of a notice policy would be speculative at best.

JA536-37, n.4 (emphasis added).  As an initial matter, the district court's placement of the burden of proof on Plaintiffs was contrary to the law.  The District, not Plaintiffs, had the "heavy burden" to prove that it is "absolutely clear" that its violations "could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 170.[2]

The district court erred further by failing to apply the law regarding the likelihood of recurrence.  Courts consider several factors in evaluating that

---

[2] Even if Plaintiffs had the burden, they met it by producing evidence of non-compliance.  JA475-76, paras. 11-17 (Robertson Decl.); JA478-83 (Wolf Decl.); JA484-88 (Fortna Decl.); *see also* JA491-93 & n.1; JA496, para. 7 & n.1 (District admission that one managed care organization is not contractually obligated to provide individualized written notice).

likelihood, including the "bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *W.T. Grant*, 345 U.S. at 633. The district court did not evaluate any of those factors. Contrary to the district court's finding, it is not "speculative" that the District's violations could recur; in fact, the violations never ceased.

First, there is a "presumption of future injury" to plaintiffs when a defendant has supposedly ceased its illegal conduct in response to litigation. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 109 (1998); *see also DL*, 187 F. Supp. 3d at 11 (finding that "the District came into compliance with the Rehabilitation Act in direct response to this litigation, a finding [which] makes it more difficult for the District to demonstrate recurrence is unlikely"). Sister circuits have stated that "we are more skeptical of voluntary changes that have been made long after litigation has commenced" (*Burns v. PA Dep't of Correction*, 544 F.3d 279, 284 (3d Cir. 2008)), and "we are more likely to find that cessation moots a case when cessation is motivated by a defendant's change of heart rather than his desire to avoid liability." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1186 (11th Cir. 2007).

Here, the timeline shows that the District issued the Transmittal Memo in direct response to developments in this case, long after the start of litigation, in a desire to avoid a judicial determination of liability. Specifically, the District only

began taking limited action in an effort to moot this case after eight years of litigation, following the decisions of this Court and the district court in *NB IV*, 794 F.3d at 41-44, and *NB V*, 244 F. Supp. 3d at 182, which indicated that the failure to provide individualized written notice was unconstitutional.  Although the district court found in *NB V* that Plaintiffs were entitled to individualized written notice, that was a decision made at the motion to dismiss stage, not a final judgment.  When Plaintiffs then moved for summary judgment and a permanent injunction (JA18), the District saw the writing on the wall and began a pilot program to test the provision of individualized written notice.  JA321.  In 2020, only after its fourth motion to dismiss was denied and the case was poised to enter discovery for the first time in ten years did the District issue the Transmittal Memo.  *See* JA25-26.  Then, it promptly moved to dismiss again, despite having represented just two months earlier that it lacked the funds and approval of Mr. Turnage to implement a city-wide policy. *See* pp. 9-10 above.

        As the district court subsequently observed: "The District has made a special effort to try to resolve this case in a way that would result in it being mooted, right?" JA502 (Tr.2:17-19).  That "special effort" to moot the case after many years means that the District does not deserve the presumption of good faith in its voluntary conduct.  *See DL*, 187 F. Supp. 3d at 15 ("After over ten years of constant violations, pointing to the existence of compliance policies that were created and implemented

*during this litigation* does not meaningfully contribute to a finding that future violations are unlikely to recur" (emphasis in original)).

Second, the Transmittal Memo has not been shown to be effective. *See W.T. Grant*, 345 U.S. at 633 ("effectiveness of the discontinuance" relevant to the likelihood of recurrence). That is, the District has not shown that it has practices and procedures to ensure compliance with the Transmittal Memo or that pharmacies are actually complying with it. *See* pp. 17-22 above. The Transmittal Memo is only a policy on paper that, by itself, it not an effective remedy for Plaintiffs' injuries.

Moreover, the impermanent nature of the Transmittal Memo shows how easily violations could recur. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (case "not moot, since the moratorium [on police chokeholds] by its terms is not permanent"); *DL*, 187 F. Supp. 3d at 13 (case not moot, because "although the District has implemented policies to identify and educate disabled children, there is nothing obviously permanent about these programs, . . . which weighs against" finding that the District's violations could not reasonably be expected to recur). The Transmittal Memo is an agency memorandum authored by Ms. Byrd, not a regulation or statute. *Cf. New York State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam) (claim moot where New York State "amended its firearm licensing statute" and New York City amended its municipal rule to provide the "precise relief that petitioners requested"). Accordingly, the

Transmittal Memo may be reversed by Ms. Byrd or her superiors, including Mr. Turnage and the Mayor, not to mention future officials and mayoral administrations, by the "stroke of a pen." *Alaska v. USDA*, 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021).[3] Its continued operation may also be halted if the agency or the Mayor decide not to request funding, or if the D.C. Council decides not to approve funding, for its operation in the future.

The sole evidence that the District relied on to meet its burden of proof as to the likelihood of recurrence is a conclusory statement by Ms. Byrd that "the District has no intention of rescinding this policy." JA495, para. 3. That statement is insufficient assurance. For one thing, such statements by current officials do not bind successor officials. *See* p. 35 & n.3 above. For another, it is doubtful that Ms. Byrd could speak on behalf of other government entities such as her superior, Mr.

---

[3] *See also, e.g.*, *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574 (2d Cir. 2003) ("The Fire District has not met its heavy burden because the interpretation of the code might change again—for example, upon a change in the State Fire Marshal's administration"), *superseded on other grounds by Mhany Mgmt. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016); *Hernandez v. Cremer*, 913 F.2d 230, 235 (5th Cir. 1990) ("current . . . policy, absent the injunction, is . . . subject to withdrawal at the discretion of the Service's District Director"); *Northland Family Planning Clinic v. Cox*, 487 F.3d 323, 341 (6th Cir. 2007) (opinion of Michigan Attorney General "not precedential, and the current Attorney General could change it whenever he sees fit, as could any future Attorneys General"); *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007) ("Shelley . . . no longer occupies the position of Secretary of State, and the current incumbent" could restart challenged conduct "at her discretion"); *Finstuen v. Crutcher*, 496 F.3d 1139 (10th Cir. 2007) (agency commissioner had no "authority to bind his successors").

Turnage, the Mayor, or the D.C. Council about the District's "intention."  *See Finstuen*, 496 F.3d at 1150 (statement by commissioner of state agency not "authoritative" for purposes of voluntary cessation because he had no authority to act on behalf of the State).

Most importantly, the language used by Ms. Byrd—that the District "has no <u>intention</u> of rescinding" the Transmittal Memo—does not provide enough assurance that the District will not resume its due process violations by either reversing the Transmittal Memo or failing to enforce it.  Even assuming that the District has no present "intention" to rescind the Memo, the statement leaves open the possibility that the District's "intention" might change in the future.  Other cases considering similar language have reached that conclusion.  In *Sackett v. EPA*, plaintiffs sued EPA to challenge a compliance order issued against them.  8 F.4th 1075, 1081 (9th Cir. 2021).  After 12 years of litigation, EPA sent plaintiffs a letter withdrawing the order and assuring plaintiffs that "EPA does not intend to issue a similar order to you in the future for this Site."  *Id.* at 1082.  The Ninth Circuit held that EPA's withdrawal of the order was insufficient to moot the case and that EPA's "stated intention" was insufficient to show that the challenged conduct could not recur, since the statement "does not bind the agency, and EPA could potentially change positions under new leadership."  *Id.* at 1083; *see also Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1998) ("Defendants have neither

asserted nor demonstrated that they will <u>never</u> resume" the challenged conduct (emphasis added)); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 769 (6th Cir. 2019) (statement from university officials about challenged policy "does not indicate any future intentions. . . . [I]t is simply not a meaningful guarantee that the definitions will remain the same in the future").  Ultimately, however, "[e]ven assuming [the District] ha[s] no intention to alter or abandon" the Transmittal Memo, "the ease with which [it] could do so counsels against a finding of mootness[.]"  *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (citation omitted).

Third, the "character of past violations" is relevant to recurrence. *W.T. Grant*, 345 U.S. at 633.  The District has a long history of violating Plaintiffs' due process rights: before this lawsuit, and for nearly ten years while it was pending, the District had no policy requiring it or its contractors to provide Plaintiffs with individualized written notice.  It waited nine years before even beginning to take steps to provide such notice.  *See Young v. District of Columbia Housing Auth.*, 31 F. Supp. 3d 90, 98 (D.D.C. 2014) ("lengthy history of failing to" comply with federal law "undercuts any reasonable expectation that the violation will not reoccur").  Moreover, there is unrebutted evidence in the record that the District has not required compliance with past transmittals.  In December 2010, the District issued a transmittal requiring pharmacies to post a generic sign near their counters informing persons of their due process rights—a one-time act, which, although constitutionally insufficient, is

much simpler to carry out than the provision of individualized written notice to all Medicaid beneficiaries and applicants denied Medicaid coverage. JA122-23. In 2013, Plaintiffs surveyed 11 pharmacies to ascertain whether they were complying with the signage policy and found that none were. JA145-47. Plaintiffs also submitted evidence that individual Plaintiffs had not seen the required sign at their pharmacies. JA148-49, paras. 4, 6, 8; JA151, para. 3; JA154, para. 5; JA155-56, paras. 3, 5, 7; JA159, para. 6. Recently, in Plaintiffs' survey of compliance with the 2020 Transmittal Memo, Plaintiffs found that 10 of 16 pharmacies surveyed did not have the signage required by the 2010 transmittal. JA479, para. 7 (Wolf Decl.); JA485, para. 7 (Fortna Decl.). The District's failure to ensure compliance with its 2010 transmittal further demonstrates that it cannot be trusted to ensure compliance with its 2020 Transmittal Memo.

Fourth, courts are particularly skeptical that a defendant's conduct could not reasonably be expected to recur when the defendant maintains the lawfulness of its challenged conduct. *See, e.g.*, *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022); *Knox v. SEIU, Local 1000*, 567 U.S. 298, 307 (2012); *In re Center for Auto Safety*, 793 F.2d 1346, 1353 (D.C. Cir. 1986). Here, the District has vigorously fought Plaintiffs' lawsuit for 12 years. It has never admitted that it has a constitutional obligation to provide individualized written notice to Plaintiffs. It did not change its laws or regulations to codify Plaintiffs' due process rights. Indeed, Ms. Byrd

carefully states that the purpose of the Transmittal Memo is to be "helpful," not to correct a constitutional wrong.  JA413, para. 4.  And, importantly, the District continues to disavow control over Managed Care contractors for the provision of individualized written notice.  *See* pp. 21-22 above.  In other words, not only has the District never acknowledged its constitutional responsibility, it also specifically rejects responsibility to Plaintiffs enrolled in Managed Care, who comprise more than three-quarters of all Medicaid beneficiaries in the District.

## II. THE DISTRICT COURT ERRED BY FINDING THAT THE TRANSMITTAL MEMO PROVIDES COMPLETE RELIEF TO PLAINTIFFS

Apart from the doctrine of voluntary cessation, it is a fundamental principle that "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  *Decker v. Northwest Environmental Defense Center*, 568 U.S. 597, 609 (2013).  Thus, the availability of even a "partial remedy" is "sufficient to prevent [a] case from being moot." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox*, 567 U.S. at 307-08.  Here, the Transmittal Memo did not foreclose further injunctive relief or declaratory relief, yet the district court incorrectly found that "the policy [in the Transmittal Memo] covers the entirety of the putative class, and thus provides complete relief to all potential plaintiffs."  JA535.

As this Court has instructed, it is important to "defin[e] the wrong" inflicted on a plaintiff in order to evaluate whether a defendant's action might fully remedy it. *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc). Plaintiffs' injury is that they do not "receive" individualized written notice. JA167, para. 10; *see also NB V*, 244 F. Supp. 3d at 181 ("plaintiffs have stated a claim that they have received insufficient notice"). The "wrong" inflicted upon Plaintiffs is that the District's "actions and inactions [which] amount to ongoing policy, pattern, practice, and/or custom . . . violate plaintiffs' rights under the Due Process Clause of the Fifth Amendment." JA198, para. 153.

As relief, Plaintiffs requested, *inter alia*, a declaratory judgment that the District's "policies, practices, and procedures" violate their due process rights, injunctive relief ordering the District and its agents to comply with the Due Process Clause, and "[r]etention of jurisdiction over this action to ensure defendant's compliance with the mandates of the Court's orders[.]" JA199. As evident in that request for relief, part of the purpose of injunctive relief "is to prevent future violations"—*i.e.*, compliance. *W.T. Grant*, 345 U.S. at 633. Plaintiffs requested not only a change in policy but actual receipt of due process notice at the pharmacy.

The record also shows that, in order to actually provide the individualized written notice that Plaintiffs seek, more than a policy is required: by the District's own admission, the District cannot implement such a program without the

cooperation and compliance of a chain of entities—some of which the District argues are not state actors. *See* pp. 21-22 above. The program's continued existence requires approval and funding from other government entities. *See* pp. 18-19 above. The District stated that it would monitor pharmacy compliance (JA409), but provided no evidence of doing so. Thus, at a minimum, complete injunctive relief must consist of "practice"—in addition to "policy"—ensuring that Plaintiffs actually receive individualized written notice.

The district court erroneously concluded that the Transmittal Memo fully addressed the wrong alleged by Plaintiffs. *See* JA537 ("By implementing Transmittal #20-01, the District has now enacted a <u>policy</u> specifically designed to provide the notice to which plaintiffs are entitled" (emphasis added)). However, Plaintiffs' claim concerns the District's "actions and inactions" which amount to "pattern, practice, and/or custom" (JA198, para.153), not solely a policy change. A wrong can persist notwithstanding the adoption of a policy intended to address the wrong. *See, e.g.*, *True the Vote*, 831 F.3d at 561; *Zukerman*, 961 F.3d at 443. That is the situation here, where 13 of 16 pharmacies surveyed do not follow the Transmittal Memo and a Plaintiff is still not receiving required notice. *See* pp. 22-

41

26 above.  Thus, since the district court could have ordered further injunctive relief requiring compliance with Transmittal Memo, its ruling was in error.[4]

Likewise, the district court could have ordered effectual declaratory relief.  It erroneously found that "[b]ecause the injunctive relief sought by the plaintiffs has been mooted by the change in D.C. policy, plaintiffs' declaratory judgment claims cannot survive alone."  JA538, n.5.  But since the claim for injunctive relief was not moot, Plaintiffs were not left with only declaratory relief.

However, assuming *arguendo* that only declaratory relief was available, the district court erred in finding that a declaratory judgment here would amount to an advisory opinion.[5]  *See* JA538, n.5.  It is well established that if there remains a

---

[4] The district court also failed to follow its prior ruling in *NB V*.  In granting the District's sixth motion to dismiss, the district court incorrectly stated that "the notice requirement satisfies what I have previously held to be the process due to the plaintiffs in this case[.]"  JA536.  In fact, in *NB V*, the district court found that Plaintiffs are entitled to "some initial notice" but that "it is inappropriate to determine the nature or scope of specific relief prior to discovery or the Court's determination of any class certification motions."  244 F. Supp. 3d at 182-83.

[5] The district court cites two cases in support of its statement that "plaintiffs' declaratory judgment claims cannot survive alone."  JA538, n.5.  However, those cases are inapposite because the claims at issue were indisputably moot and a declaratory judgment would have had no effect on the future rights of the plaintiffs. In *Planned Parenthood of Wisconsin v. Azar*, the plaintiffs challenged a 2018 agency announcement soliciting grants.  942 F.3d 512, 515 (D.C. Cir. 2019).  While the appeal was pending, the agency disbursed the 2018 grant funds and amended the regulation for 2019.  *Id.*  In those circumstances, declaring the 2018 announcement to be unlawful would serve no purpose.  *Id.* at 516.  In *Spencer v. Kemna*, a former prisoner sought to invalidate an order revoking his parole but had already been

controversy between the parties, the availability of declaratory relief means the case is not moot even if injunctive relief has been mooted. *See Super Tire Engineering v. McCorkle*, 416 U.S. 115, 122 (1974).

"A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*." *Justice Network v. Craighead County*, 931 F.3d 753, 764 (8th Cir. 2019) (emphasis in original). Therefore, "[a] controversy may remain to be settled" where, as here, there remains "a dispute over the legality of the challenged practices[.]" *W.T. Grant*, 345 U.S. at 632. Here, even if the Transmittal Memo was being followed by the Medicaid pharmacies in practice, a declaratory judgment would define the legal rights of the parties (*i.e.*, the District is obligated to provide individualized written notice to Plaintiffs) and would anticipate future conduct (*i.e.*, the District's failure to provide such notice). In the event that the District fails to provide required notice in the future, a "declaratory judgment can . . . be used as a predicate to further relief, including an injunction." *Powell v. McCormack*, 395 U.S. 486, 499 (1969).

---

released from prison by the time his petition for a writ of habeas corpus was heard. 523 U.S. 1, 3-6 (1998). Since the petitioner did not suffer any injuries attributable to his parole revocation order, his case was moot, and declaring that order to be "right or wrong" would serve no purpose. *Id.* at 14-18. Unlike in those cases, Plaintiffs here have demonstrated ongoing unlawful conduct and there remains a live controversy about the parties' rights and obligations in relation to the District's future conduct.

The District bears the burden of proof to show that there is no longer any controversy between the parties. That issue is intertwined with the likelihood that the District's violations will recur. *See* pp. 30-39 above. As explained by the Supreme Court, "The underlying concern [of justiciability] is that, when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated, then it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (cleaned up). Conversely, if there is a reasonable expectation that the wrong will be repeated, then it will be possible for the court to grant effectual relief—including declaratory relief. As stated by the Third Circuit: "When a plaintiff seeks declaratory relief, a defendant arguing mootness must show that there is no reasonable likelihood that a declaratory judgment would affect the parties' future conduct." *Hartnett v. Pennsylvania State Education Ass'n*, 963 F.3d 301, 306 (3d Cir. 2020).

Here, of course, the District did not and could not make that showing since its violations of Plaintiffs' rights are likely to recur in the future, particularly given that it has not admitted that it has a legal obligation to provide individualized written notice and disavows responsibility over its Managed Care contractors to provide such notice. In short, there remains "a dispute over the legality of the challenged practices" (*W.T. Grant*, 345 U.S. at 632) that is likely to affect the future conduct of

the parties. *See Hartnett*, 963 F.3d at 206. Under these circumstances, a declaratory judgment that would permanently settle the rights and obligations of the parties is necessary and would be "effectual." *Decker*, 568 U.S. at 609; *DL*, 187 F. Supp. 3d at 16-18.

### III. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING THE DISTRICT'S MOTION TO DISMISS WHILE BARRING PLAINTIFFS FROM DISCOVERY

This Court has cautioned that, when jurisdictional facts are disputed in a motion to dismiss under Rule 12(b)(1):

> First, a trial court relying upon its own resolution of disputed facts should provide . . . an explicit explanation of its findings so that judicial review might be had. Second, though the trial court may rule on disputed jurisdictional facts at any time, if they are inextricably intertwined with the merits of the case it should usually defer its jurisdictional decision until the merits are heard. Finally, should the trial court look beyond the pleadings, it must bear in mind what procedural protections could be required to assure that a full airing of the facts pertinent to a decision on the jurisdictional question may be given to all parties. Indeed, this Court has previously indicated that ruling on a Rule 12(b)(1) motion may be improper before the plaintiff has had a chance to discover the facts necessary to establish jurisdiction. In many instances it may be necessary to hold evidentiary hearings in resolving particularly complicated factual disputes rather than to rely on affidavits alone.

*Herbert*, 974 F.2d at 197-98 (citations omitted); *see also Wilderness Society v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987) ("[T]he district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss . . . . Insofar as the defendant's motion to dismiss

raises factual issues, the plaintiff should have an opportunity to develop and argue the facts in a manner that is adequate in the context of the disputed issues and evidence" (quoting *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981)).  Since the district court did not follow any of that guidance, it abused its discretion.  *See Babbitt*, 43 F.3d at 1497.

    As shown above, to the extent that the court "explicit[ly]" explained its findings (*Herbert*, 974 F.2d at 197), they are legally and factually erroneous.  The district court also abused its discretion in managing the proceedings related to mootness.  This is a case where the merits are "inextricably intertwined" with mootness (*see id.* at 198); that is, the question of whether the District is liable for failing to provide individualized written notice to Plaintiffs (the merits) is nearly the same as the question of whether the District is, in fact, providing individualized written notice to Plaintiffs (mootness).  In such circumstances, the district court should "defer its jurisdictional decision until the merits are heard."  *Id.*  However, since the district court nevertheless proceeded to "look beyond the pleadings," Plaintiffs were entitled to a fair proceeding to discover relevant and disputed facts. *Id.*  The district court did not provide one.  Rather, the district court gave the District multiple chances over the span of a year-and-a-half to unilaterally attempt to establish disputed jurisdictional facts, without giving Plaintiffs the opportunity to take discovery on those facts and without conducting fair fact-finding itself—such

46

as through the evidentiary hearing suggested by the Court in *Herbert*, in which Plaintiffs could have cross-examined Ms. Byrd and other witnesses. Then, as shown above, the district court proceeded to disregard evidence of ongoing violations and erroneously dismissed the case as moot. As the Court stated in *Herbert*, the district court's "ruling on [the District's] Rule 12(b)(1) motion" was "improper before . . . plaintiff[s] . . . had a chance to discover the facts necessary to establish jurisdiction." 974 F.2d at 197-98.

## IV.    THE CASE SHOULD BE REASSIGNED

The 12-year record in this case shows that the district judge has been extraordinarily unfair to Plaintiffs. Plaintiffs have had every legal issue related to their due process claim ultimately resolved in their favor since the inception of this case, largely due to decisions of this Court reversing erroneous dismissals on appeal. *See NB II*, 682 F.3d at 82-87; *NB IV*, 794 F.3d at 41-44; *NB V*, 244 F. Supp. 3d at 182.[6] Thus, they should have been entitled to discovery and timely adjudication of their claim long ago. However, in the 12 years since this case was filed, the district judge has prohibited Plaintiffs from taking any discovery, contrary to the normal operation of the Federal Rules of Civil Procedure and the normal administration of justice.

---

[6] Although the district court ruled in Plaintiffs' favor in *NB V*, that decision was compelled by this Court's decision in *NB IV*, 794 F.3d at 41-44.

Bias is evident in the district judge's disparate treatment of motions filed by Plaintiffs and the District. On one hand, the judge has permitted the District to file unmeritorious motions to dismiss six times in total and has repeatedly (and erroneously) granted those motions.

On the other hand, the district judge has refused to entertain Plaintiffs' motions for discovery, class certification, and summary judgment and a permanent injunction. Begin with the issue of discovery. The judge first stayed discovery on March 7, 2011, pending its decision on the District's first motion to dismiss, then dismissed the case. *See NB I*, 800 F. Supp. 2d at 56-57. Plaintiffs have been prohibited from taking discovery ever since.

Plaintiffs have repeatedly attempted to lift the stay on discovery. When the case was remanded from this Court the first time, in 2012, Plaintiffs filed a motion requesting a schedule which included discovery. JA13; *see* JA64. The district judge denied that motion. JA13. In 2013, when the District moved to dismiss for the second time, it moved for summary judgment in the alternative. JA14. Plaintiffs opposed the motion and filed a Rule 56(d) affidavit explaining that they required limited discovery to respond to factual claims in the District's motion. JA14; *see* JA126-44. Rather than permitting Plaintiffs to take discovery, the judge dismissed the case for the second time. *NB III*, 34 F. Supp. 3d at 146.

48

In January 2020, following the denial of the District's fourth motion to dismiss, discovery was briefly unfrozen when the district judge issued a schedule which included discovery. JA25-26. But before Plaintiffs had the opportunity to take discovery, the District filed its fifth motion to dismiss (or, in the alternative, for summary judgment), accompanied by another motion to stay discovery. JA26. Plaintiffs again sought discovery under Rule 56(d) to respond to the District's factual claims. JA26; *see* JA439-46. The district judge again granted the District's motion to stay discovery and denied Plaintiffs' request for Rule 56(d) discovery. JA462.

At the status conference of July 23, 2021, the district judge stated that if the District could not satisfactorily answer three factual questions, he would allow discovery to proceed. JA502-04. As described above, pp. 17-22, the District failed to provide evidence to resolve those questions. Nonetheless, even though Plaintiffs yet again submitted a Rule 56(d) affidavit (*see* JA29; JA524-28), the judge denied Plaintiffs' motion to lift the stay on discovery and dismissed the case for a third time. JA539.

The district judge has refused to consider the issue of class certification. Plaintiffs timely moved for class certification on December 8, 2010, shortly after filing their complaint. JA9. That motion was never ruled upon. The judge stayed the case pending its ruling on the District's first motion to dismiss, then dismissed the case. JA12. However, the judge did not rule on the class certification motion

even after the case was reversed on appeal and remanded for the first time.  Nor did the judge rule on the motion after the case was reversed and remanded a second time.

Having received no ruling on their initial class certification motion after eight years of litigation, on October 22, 2018, Plaintiffs filed a renewed motion for class certification.  JA18.  On July 24, 2019, the district judge denied that motion "without prejudice" (JA272) choosing to decide the District's fourth motion to dismiss first— even though that motion was filed on May 31, 2019, seven months after Plaintiffs' renewed class certification motion.[7]  JA22.

Likewise, the district judge refused to address the merits of Plaintiffs' two summary judgment motions.  On November 16, 2018, Plaintiffs moved for summary judgment on liability and a permanent injunction or, in the alternative, a preliminary injunction.  JA18-19.  The judge denied that motion without prejudice in a minute order.  JA272.  On June 28, 2019, in response to the District's fourth motion to dismiss, Plaintiffs cross-moved for partial summary judgment on the issue of whether the District's Managed Care contractors take state action.  JA22.  The judge denied that motion without prejudice, too.  JA400.

---

[7] On August 19, 2019, Plaintiffs moved for partial reconsideration of the July 24, 2019 minute order, requesting that the class certification motion be reinstated and stayed in order to protect the rights of the putative class in the event that the claims of named Plaintiffs become moot.  JA23; *see* JA273, 277.  Five months later, on January 6, 2020, the district judge denied that motion in another minute order without explanation.  JA402-03.

Most recently, as described above, pp. 45-47, the district judge encouraged the District's attempts to moot the case without giving Plaintiffs an opportunity for discovery to prepare their response.  When the District moved to dismiss this case for the fifth time, on the grounds that the Transmittal Memo mooted the case, the judge initially denied the motion but permitted the District to renew the motion on the same basis 18 months later.  In giving the District another chance to prove mootness, the judge expressed his desire to see the case mooted, telling counsel for the District at a status conference that: "Hopefully you'll be able to verify that [all members of the putative class are receiving notice under the Transmittal Memo].  I think, if they are, then that would go a long way towards mooting this case.  I want to give you a chance to address that."  JA505-06 (Tr. 5:13-25).

This Court may reassign a case to a different district judge, pursuant to 28 U.S.C. § 2106, if three conditions are met:

> (1) . . . the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind the previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) . . . reassignment is advisable to preserve the appearance of justice, and (3) . . . reassignment would [not] entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States v. Wolff,* 127 F.3d 84, 88 (D.C. Cir. 1997) (citation omitted).  The Court "need not find actual bias or prejudice, but only that the facts might reasonably

cause an objective observer to question [the judge's] impartiality." *United States v. Microsoft Corp.,* 56 F.3d 1448, 1463 (D.C. Cir. 1995) (per curiam).

The test for reassignment is met here.  The record shows that the district judge cannot be expected upon remand to move the case forward on the merits.  *See* JA334 (Tr. 12:18-20) ("The Court of Appeals doesn't always agree with me.  Frankly, it's a Badge of Honor sometimes, from my point of view").  Twelve years and three dismissals later, this case has not moved an inch.  *See Pulse Network v. Visa*, 30 F.4th 480, 496 (5th Cir. 2022) (reassigning case when "four years into the litigation, [plaintiff] had not been allowed to take any party discovery from Visa—no document requests, no interrogatories, no depositions, nothing" (emphasis in original)); *U.S. v. Sears, Roebuck & Co.*, 785 F.2d 777, 781 (9th Cir. 1986) (reassigning case after the third time the government had to appeal dismissal of indictment).  For the same reason, reassignment is necessary to preserve the "appearance of justice."  Indeed, it would not only "appear" unjust, but would <u>be</u> unjust, to remand the case to the same judge, only to have the case be dismissed yet again or languish for many more years without moving to discovery.  Finally, reassignment would not be wasteful or duplicative.  The issues of standing, the cognizability of Plaintiffs' due process claim, and state action have been resolved by this Court.  Plaintiffs' claim is ready to proceed to discovery for the first time.  *See*

*Pulse*, 30 F.4th at 497 ("Reassignment won't make the new judge start over because even after so much time the case has barely started").

## CONCLUSION

For the foregoing reasons, the decision of the district court should be reversed and the case should be reassigned to a different judge on remand.

Respectfully submitted,

*/s/ Michael L. Huang*
KATHLEEN L. MILLIAN, Circuit Bar No. 44908
MICHAEL L. HUANG, Circuit Bar No. pending
NICHOLAS F. SOARES, Circuit Bar No. 63714
STEPHANIE A. MADISON, Circuit Bar No. 63723
Terris, Pravlik & Millian, LLP
1816 12th Street, NW, Suite 303
Washington, DC  20009-4422
(202) 682-2100
kmillian@tpmlaw.com
mlhuang@tpmlaw.com
nsoares@tpmlaw.com
smadison@tpmlaw.com

MARTHA JANE PERKINS, Circuit Bar No. 49948
National Health Law Program
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(984) 278-7661
perkins@healthlaw.org

September 27, 2022          *Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

(1)     this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,987 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

(2)     this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14 Point Font.

 /s/ *Michael L. Huang*
MICHAEL L. HUANG
*Counsel for Plaintiffs-Appellants*

September 27, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2022, I caused a true copy of the foregoing Brief for Appellants to be delivered electronically via the Court's CM/ECF system to counsel for defendant-appellee, Richard S. Love, Ashwin Phatak, and Caroline Van Zile.

 */s/ Michael L. Huang*
MICHAEL L. HUANG
*Counsel for Plaintiffs-Appellants*